1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

CHERYL L. STEPHENS,

            Plaintiff,

v.

MICHAEL J. ASTRUE,

            Defendant.

2:07-cv-01535-KJD-LRL

**MOTION FOR REVERSAL AND/OR REMAND (#19)**

## REPORT & RECOMMENDATION

This case comes before the court on plaintiff's Motion for Reversal and/or to Remand (#19). In response, defendant filed a Cross-Motion to Affirm and in Opposition to Plaintiff's Motion for Summary Reversal and/or Remand (#21). Plaintiff filed a Reply (#23). Having considered the papers, the court finds that plaintiff has failed to meet her burden of establishing that new evidence justifies reversing this case or remanding it for further proceedings.

## BACKGROUND

On April 23, 1999, plaintiff Cheryl Stephens ("Stephens") applied for a period of disability and disability insurance benefits, and/or supplemental security income ("SSI") benefits, under Titles II and XVI, respectively, of the Social Security Act (the "Act"), *see* 42 U.S.C. §§ 401-34 and 20 C.F.R. §§ 404.1-404.2127; *see also* 42 U.S.C. §§ 1381-83f and 20 C.F.R. §§ 416.101-416.2227, alleging the she had been disabled and unable to work since December 30, 1997 due to physical and mental impairments. Tr. at 98-107. After administrative denials, the Administrative Law Judge ("ALJ"), on January 26, 2001, ruled that Stephens was not disabled on the grounds that her "severe" medically determinable impairments did not meet or equal any listing under 20 C.F.R. § 404, subpt. P, app. 1, she was not credible, she could

1    essentially do light work, and she could return to her past relevant work.  Tr. at 265.  Stephens

2    did not request Appeals Council review of the ALJ's decision, so it became a final

3    administrative order.  *Id.* at 27.

4         Stephens reapplied, protectively, on February 5, 2004, alleging a later date of disability

5    onset, April 7, 1999.  *Id.* at 27.  The applications were denied initially, and upon administrative

6    reconsideration.  *Id.*  Stephens timely requested a hearing before an ALJ.  *Id.* at 282.  Her

7    request was granted and a hearing was conducted on January 9, 2007 in Las Vegas, Nevada.

8    *Id.* at 27.  At issue was whether Stephens was under a disability defined as the inability to

9    engage in substantial gainful activity ("SGA") by reason of any medically determinable physical

10   or mental impairment that was either expected to result in death, or that lasted, or could have

11   been expected to last, for a continuous period of not less than twelve (12) months.  *See* 42

12   U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for SSI).

13        According to the ALJ, the medical evidence demonstrated that Stephens' medically

14   determinable impairments had lasted the requisite duration.  Tr. at 28.  The ALJ found,

15   however, that the record did not establish her disability within the meaning of the Act.  *Id.*

16   Stephens' representative had made a motion to amend Stephens' onset date to January 27, 2001.

17   *Id.*  This was done, in the ALJ's view, on the theory that such an amended later date -- the day

18   after the prior ALJ decision -- would avoid the application of res judicata to the prior

19   administrative decision based on *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), which raises

20   a presumption of continuing non-disability.  Tr. at 693.  While the ALJ sustained the motion to

21   the extent that the alleged onset date was amended to reflect January 27, 2001, he found this did

22   not avoid application of *Chavez*:

23        In fact, *Chavez* specifically applies when an adjudicator is deciding a subsequent
          disability claim, *with an unadjudicated period*, arising under the same title of the Act
24        as the prior disability claim, and the prior case was decided unfavorably on
          an evaluation of the medical evidence.  It is the unadjudicated period, after the
25        date of the prior decision, that evokes the application of *Chavez*, not avoids it,
          unless there is a change in circumstances indicating a greater degree of disability.

26

                                                    2

Tr. at 28 (emphasis in original).

Applying *Chavez*, the ALJ was left to determine whether Stephens sufficiently rebutted the presumption of non-disability.  The doctrine of res judicata "is applied less rigidly to administrative proceedings than to judicial proceedings."  *Chavez*, 844 F.2d at 693 (citation omitted).  The presumption does not apply if the claimant proves "changed circumstances" indicating a greater disability.  *Id.* (citation omitted); *see also Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (presumption may be overcome by new facts establishing a previously unlitigated impairment or other apparent error in the prior determination) (citation omitted).  Stephens had made new allegations and introduced new material evidence regarding new impairments, but the ALJ found that this new evidence did not establish her disability, or rebut the presumption of non-disability.  Tr. at 28.  The ALJ therefore concluded that he was compelled by res judicata to find that Stephens was still "not disabled" within the meaning of the Act.  *Id.*  The ALJ specifically found, in relevant part, as follows:

In March and April 2003, Stephens was treated for recurrent bronchitis and pneumonia, which was resolved.  *Id.* at 29.  Stephens was diagnosed with chronic obstructive pulmonary disease ("COPD") in 2004.  *Id.*  She began medication for hypothyroidism in December 2004, which controlled the condition.  *Id.*  On May 1, 2004, Stephens underwent a mental status evaluation which showed that she had coherent thought processes.  *Id.* at 30.  Her speech was clear and her concentration was fair.  There was no record of further mental health treatment.  *Id.*  On May 4, 2005, Stephens complained of transient symptoms such as congestion, headaches, and chronic cough, which were treated with medication and resolved.  *Id.* at 29.  Stephens also complained of worsening shortness of breath.  *Id.*  Stephens was a tobacco smoker, which her doctor believed was a prominent factor in exacerbating her breathing abnormality.  *Id.*  In July 2005, her doctor stated that the medication provided for her breathing had improved it.  *Id.*

. . .

Stephens' physician, Dr. Ali Kia, "in clear contradiction to his minimal objective findings, stated that [Stephens] was disabled in July 2005." *Id.*  Dr. Kia observed that Stephens walked with a cane, "but there were no specific findings or limitations discussed, and without some meaningful functional assessment," the ALJ determined that he could give Dr. Kia's comment "no appreciable weight," and attributed it to the doctor's "patient advocacy." *Id.* "Such a comment, without more, invades the purview of the Commissioner." *Id.*  Further, Stephens pulmonary function test of October 18, 2005 was "consistent with normal spirometry." *Id.*  Another pulmonary test showed "moderate" obstructive airway disease. *Id.*

In October 2005, Dr. Rito Maningo, a consultative physician, examined Stephens and found her to be in no respiratory distress. *Id.*  There was free air entry to both lung fields, with normal chest excursion. *Id.*  There was also no evidence of the use of the accessory muscles of respiration.[1] *Id.*  Ranges of motion in the back and all extremities were normal, including Stephens' right wrist. *Id.*  Stephens had no difficulty getting on and off the examination table, tandem walking, walking on toes and heels, or squatting and rising. *Id.*  Stephens likewise needed no cane to walk, contrary to her claim that she normally needed a cane to walk appreciable distances. *Id.* at 28-29.  There were no abnormalities in the examination. *Id.*  Dr. Maningo stated that "Stephens had a tendency to exaggerate her symptoms and could very well have a functional overlay component.[2]  She was a poor historian, but she was able to understand and follow instructions well." *Id.* at 29.  The Nevada state non-examining medical reviewing physician, Dr. George Nickles, agreed with Dr. Maningo's findings, and concluded that Stephens could perform light work. *Id.*

---

[1] "Accessory Muscles of Respiration: Muscles that are recruited to increase ventilation by patients with labored breathing.  The intercostal abdominal muscles and the platysma may be used.  Their use represents an abnormal or labored breathing pattern and is a sign of respiratory distress." *Tabers Cyclopedic Medical Dictionary* (2002).

[2] "Functional Overlay: The emotional response to physical illness.  It may take the form of a conversion reaction, affective overreaction, prolonged symptoms of physical illness after signs of the illness have subsided, or combinations of these.  Functional overlay may appear to be the primary disease; skill may be required to determine the actual cause of illness." *Tabers Cyclopedic Medical Dictionary* (2002).

4

The ALJ also noted that Stephens complained of chest pain.  An EKG showed minor lateral ST-T wave changes[3] with rare premature ventricular contractions.  *Id.* at 30.  There were no ischemic changes.  *Id.*  Doctors could find no objective explanation for Stephens' repeated pain complaints, and they settled on a fibromyalgia diagnosis, "which . . . appeared to be limit[ed] to her 'neck and shoulders.'"  *Id.*  Stephens attended a physical therapy evaluation on August 15, 2006, and the therapist recommended a one (1) month course of physical therapy.  *Id.*  Stephens' attendance was "erratic" and she was discharged from the therapy after having failed to attend two (2) or more consecutive appointments.  *Id.*

Based on the conclusions of Drs. Maningo and Nickles, the ALJ found that Stephens could perform a full range of light work.  *Id.*  While noting that Dr. Nickles added additional postural and environmental limitations, the ALJ saw no objective justification for such additional restrictions.  *Id.*  Stephens complained of an ability to sit, walk, and handle objects with her right hand due to finger numbness; however, the ALJ determined that these claims were not objectively substantiated.  *Id.*

Deciding that the record established moderate COPD, the ALJ found the condition, "except for rare exacerbations, was controlled by the medications prescribed, and the environmental restrictions, albeit only prophylactic in nature, are not justified by the minimal record."  *Id.*  Stephens' complaints of disabling pain and other symptoms were not credible, in the ALJ's eyes, when scrutinized against the record.  *Id.*  Dr. Maningo's observation that Stephens exaggerated her symptoms buttressed the ALJ's observations at the January 9, 2007 hearing that Stephens "appeared to use every opportunity to exaggerate her symptoms by stressing her inability to perform normal daily activities with statement largely in contradiction to the statement of a third party in the record."  *See id.* at 31.  The ALJ also noted that there were no surgeries or hospitalizations recommended.  *Id.* at 30.  And although Stephens said she

---

[3] Associated with decreased filling of the coronary arteries.  *Tabers Cyclopedic Medical Dictionary* (2002)**.**

needed a cane to walk, her physician did not prescribe one, "which it appears he would have done if her condition truly required it." *Id.*

In addition, while Stephens relied heavily on the mental aspect of her case, the ALJ found that she sought very little mental health treatment, "as it appears she would have done if she were truly disabled by her anxiety and depression. All indications are that her anxiety has been under control with Xanax, and that she has not been significantly limited by it. Her treatment has been minimal and marked comments describing its routine nature, without indications of the need for a greater level of care, such as hospitalization or outpatient therapy." *Id.* at 31. (At the January 9, 2007 administrative hearing, Stephens stated that she used Xanax for her anxiety, but that she was not in a chronic state of depression, or anxiety. *Id.* at 28-29.) The ALJ thus decided that Stephens' mental functional limitations were, "at worst: 'mild' restrictions of activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, and no episodes of decompensation of an extended duration. *Id.*

Based on his evaluation of the evidence, the ALJ concluded that Stephens had "severe" medically determinable impairments, including COPD, tendinitis of the right forearm and wrist, fibromyalgia, and a controlled seizure disorder, "which, in combination, more than minimally affect her ability to perform basic work activities." *Id.* at 28, 31. (The ALJ also determined that Stephens suffered from an anxiety disorder and hypothyroidism, which were not severe, either individually, or in combination with the other impairments. *Id.* at 28.) However:

> Given the claimant's residual functional capacity, I find that she can return to her past relevant work as a "keno runner" as she described it, and as an office manager, as is generally performed in the national economy. . . . Even if I found, however, that she could not return to her past relevant work, she was 41 years old at the time of her amended alleged onset date (she is now 48), and has an 11th grade education. Even assuming she has no transferable skills, there would be a significant number of jobs, existing in the national economy, which she could do, and she is "not disabled" under direct application of Medical-Vocational rule 202.18.

*Id.* at 31.

Stephens requested a review of the ALJ's decision on July 23, 2007. *Id.* at 22. The Social Security Administration, Office of Disability Adjudication and Review, Appeals Council denied

6

1   Stephens' request for review, finding "no reason under [its] rules to review the Administrative Law

2   Judge's decision." *Id.* at 18.  Hence, the ALJ's decision became the final decision of the Commissioner

3   of the Social Security Administration, Michael J. Astrue (the "Commissioner").   *See id.*

4          On November 6, 2007, Stephens submitted another request for review of the ALJ's decision.

5   *Id.* at 16.  She stated therein that she underwent further medical testing which showed that she had

6   physical impairments preventing her from working.  *Id.*  The Appeals Council received the additional

7   evidence, consisting of medical records from the University Medical Center dated May 2, 2005 to June

8   20, 2007, and a corresponding letter from Stephens dated October 2, 2007.  *See id.* at 15.  The new

9   evidence showed that Stephens had a muscoloskeletal condition that was mild in degree of severity.

10   After considering this evidence with all of the other evidence in the record, the Appeals Council found

11   that the ALJ's findings and conclusions were not contrary to the weight of the evidence then in the

12   record.[4]  *Id.* at 12-14.  It denied Stephens' second request for review, also denying Stephens' request

13   to reopen and change the final decision on her earlier applications.  *Id.* at 12.

14   . . .

15   . . .

16   . . .

17   . . .

18   . . .

19   . . .

20   . . .

21   . . .

22   . . .

23   . . .

24

25          [4] The Appeals Council also examined treating source notes from the University Medical Center dated July 30, 2007

26   to September 13, 2007.  This included a nerve conduction study report and a pulmonary function testing report.  The ALJ
   had decided Stephens' case through July 19, 2007.  Hence, this new information did not affect the decision as to Stephens'
   alleged disability.  Tr. at 13.

**DISCUSSION**

Stephens asks the court to reverse the decision of the Commissioner and award her the benefits sought. In the alternative, Stephens requests a remand to correct legal errors and factual deficiencies. Stephens claims that the medical evidence of record demonstrates that her condition worsened after the ALJ decision of January 26, 2001. Stephens also contends that the subsequent ALJ was required to include environmental limitations in his residual functional capacity ("RFC") findings because he found that Stephens had severe COPD.

When deciding a Social Security appeal, the decision of the Commissioner must be affirmed if it is supported by substantial evidence and the Commissioner applied the correct legal standards. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (citation omitted). When reviewing factual determinations by the Commissioner, acting through the ALJ, the court affirms if substantial evidence supports the determinations. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003) (citation omitted). "Substantial evidence is more than a mere scintilla, but less than a preponderance . . . ." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003) (citation omitted). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion when the entire record is considered. *Id.* (citation omitted). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1196 (citation omitted). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000) (citation omitted).

When presented with conflicting medical opinions in a Social Security disability proceeding, it is the ALJ's role to determine credibility and resolve the conflict. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citation omitted); *see also Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities) (citation omitted). Where evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision. *Batson*, 359 F.3d at 1193 (citation omitted).

Social Security regulations require that the ALJ gives "controlling weight" to the medical opinion of an applicant's treating physician, so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2). Generally, the more consistent an opinion is with the record as a whole, the more weight the Social Security Administration will give to that opinion. 20 C.F.R. § 404.1527(d)(4).

In this case, the ALJ reviewed the complete record, which consisted of two (2) physicians' opinions contradicting Dr. Kia's opinion. One physician, Dr. Maningo, was an examining physician; the other, Dr. Nickles, was a non-examining medical reviewing physician. The ALJ expressly relied on the opinions of Drs. Maningo and Nickles over that of Dr. Kia. Dr. Maningo specifically tested Stephens' physical functioning, finding Stephens to be in no acute respiratory distress. Tr. at 471. There was free air entry to both lung fields, with normal chest excursion. *Id.* There was also no evidence of the use of accessory muscles of respiration, *see id.*, which would have been a sign of respiratory distress. Ranges of motion in the back and extremities, including Stephens' right hand (she is right-handed), were normal. *Id.* at 472. Stephens had no difficulty getting on and off the examination table, tandem walking, walking on toes and heels, or squatting and rising. Accordingly, there were no abnormalities in the examination. *Id.* Dr. Nickles agreed with Dr. Maningo's findings and concluded that Stephens could perform light work. *Id.* at 480.

The ALJ found Drs. Maningo and Nickles' opinions more credible and thus placed more weight on them. Dr. Maningo's observation that Stephens exaggerated her symptoms and "could very well have a functional overlay component," *see id.* at 473, was supported by the ALJ's observation at the hearing that Stephens "appeared to use every opportunity to exaggerate her symptoms by stressing her inability to perform normal daily activities with statement largely in contradiction to the statement of a third party in the record." *Id.* at 31. The ALJ also noted that, although Stephens said she needed a cane to walk, her physician did not prescribe one, "which it appears he would have done if her condition truly required it." *Id.* The ALJ's decision was based on substantial evidence in the record supporting

his reliance on the opinions of Drs. Maningo and Nickles, and therefore was sufficient under the regulations and within the discretion of the ALJ.

Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citation omitted). The ALJ's decision should illustrate that he considered the expertise of the treating physician(s) and considered the record as a whole. *See* 20 C.F.R. § 404.1527(d). Here, the ALJ found Dr. Kia's opinion to be "in clear contradiction to his minimal findings." Tr. at 29. Dr. Kia opined that Stephens was disabled in July 2005, *see id.* at 365, "but there were no specific findings or limitations discussed, and without some meaningful functional assessment," the ALJ could not give Dr. Kia's comment "appreciable weight," and attributed it to the doctor's "patient advocacy." *Id.* at 29. In fact, tests of Stephens' pulmonary function performed on August 2, 2005 showed only "moderate" obstructive airway disease, buoying the ALJ's assessment of Dr. Kia's analysis. *Id.* at 624. Another test, conducted on October 18, 2005, was "consistent with normal spirometry." *Id.* at 448.

Stephens acknowledges that Dr. Kia's statement as to her disability alone does not constitute substantial evidence to support a finding of disability. Mot. (#19) at 5. However, Stephens contends that the ALJ should have recontacted Dr. Kia to obtain further explanation and clarification of his opinion. *Id.* According to Stephens, "the ALJ failed in his affirmative obligation to fully and fairly develop the record." *Id.* "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation and internal quotation marks omitted). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted).

In *Bayliss v. Barnhart*, the Ninth Circuit concluded that the ALJ was not required to recontact

a psychologist before rejecting parts of her opinion as unsubstantiated by any objective tests or clinical findings.  427 F.3d 1211, 1217 (9th Cir. 2005).  The court found that "[t]he claimant bears the burden of proving that she is disabled," and that "[a]n ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination."  *Id.* (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).  Because the ALJ, with support in the record, found the evidence adequate to make a determination regarding the claimant's disability, he did not have a duty to recontact the doctor, and he reasonably based his conclusions on the evidence provided at the time of his decision.  *See id.*  The ALJ in this case was not required to recontact Dr. Kia because the record was not ambiguous or inadequate for proper consideration of Stephens' interests and evaluation of the evidence.  Substantial evidence supported the ALJ's decision that Stephens was not disabled.  Finding to the contrary would improperly shift the initial burden of proof from the claimant to the Commissioner.

Lastly, the court finds that the ALJ properly evaluated the record to conclude that Stephens did not suffer from a "severe" mental impairment.  An impairment is "severe" if it significantly limits a claimant's ability to perform basic work activities for at least a continuous twelve (12) month period.  20 C.F.R. § 404.1520(a)(c); *see also* 42 U.S.C. § 423(d)(1)(A); Social Security Ruling (SSR) 96-3p, 61 Fed. Reg. 34,468, 34,469 (1996) (considering allegations of pain and other symptoms in determining whether a medically determinable impairment is "severe").  Here, the ALJ fully considered Stephens' allegation of severe mental impairments, but properly found that the evidence did not support her allegations.  Tr. at 30-31.  Specifically, mental status evaluations in May 2004 and August-September 2006 were unremarkable, and the record did not show any further mental health treatment.  *Id.* at 533-47.  Stephens herself stated at the hearing that she used Xanax for her anxiety, but that she was not in a chronic state of depression, or anxiety.  *Id.* at 28-29.  Moreover, although the ALJ improperly considered Stephens' failure to seek rehabilitation, *see Van Nuyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)), Stephens points to little or no evidence that she had limitations stemming from a mental

impairment, let alone that they were significantly limiting her ability to perform basic work activities, as the regulations require.  *See* 20 C.F.R. § 404.1512(c) (claimant "must provide medical evidence showing that [she has] an impairment(s) and how severe it is during the time [she says] that [she] is disabled").

**RECOMMENDATION**

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that plaintiff's Motion for Reversal and/or to Remand (#19) be denied and defendant's Cross-Motion to Affirm (#21) be granted.

DATED this 25th day of June, 2008.


_____

**LAWRENCE R. LEAVITT
UNITED STATES MAGISTRATE JUDGE_____**